**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION**

| | | |
|---|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 1:25-cv-2986 |
| ROLAND PARK SNF OPERATIONS, LLC, et al., | ) ) ) | |
| Defendants. | ) ) ) | |

**PLAINTIFF EEOC'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

# Table of Contents

INTRODUCTION ........................................................................................................... 3

RELEVANT FACTUAL BACKGROUND...................................................................... 4

STANDARD OF REVIEW ............................................................................................. 4

ARGUMENT .................................................................................................................. 5

    I.      EEOC is Not Required to Allege A Prima Facie Case Under the *McDonnell Douglas* Circumstantial Evidence Framework.................................................................... 6

    II.     EEOC has Stated a Claim for Failure to Provide Reasonable Accommodation Under the PWFA and PDA. ................................................................................................ 7

        a.      The PWFA Does Not Require the Employee to be Able to Perform all Essential Functions................................................................................................................. 7

        b.      The PWFA Does Not Require Demonstration of Pregnancy-Based Discriminatory Motivation.............................................................................................................. 11

        c.      *Daugherty* Does Not Provide a Basis to Dismiss the Complaint............................ 12

        d.      The Complaint Alleges a Violation of the PDA/Title VII. ...................................... 14

    III.    EEOC Has Pleaded Adequate Facts Regarding Defendants' Liability. ................... 18

    IV.    The Complaint Permits the Inference that Defendants Terminated Ms. Williams Because of Sex in Violation of the PDA and/or Because of her Need for Accommodation in Violation of the PWFA. ...................................................................................................... 22

    V.    EEOC Has Not Brought Claims of Retaliation............................................................ 25

CERTIFICATE OF SERVICE ....................................................................................... 27

Plaintiff U.S. Equal Employment Opportunity Commission ("EEOC") hereby files this Response in Opposition to Defendants Roland Park SNF Operations, LLC ("Roland Park") and Atlas Healthcare NJ, LLC ("Atlas Healthcare") (collectively "Defendants") Motion to Dismiss Plaintiff's Complaint in the above-styled and numbered action. For the reasons set forth more fully below, Defendants' Motion should be denied.

## INTRODUCTION

In this action, EEOC has filed a four count complaint relating to Defendants' failure to provide former employee Taniah Williams with reasonable accommodation of her pregnancy and related medical conditions and their resulting unlawful termination of her employment. The first two counts for failure to reasonably accommodate are brought under different statutes with distinct legal standards. In arguing for their dismissal, Defendants conflate these standards, erroneously applying Pregnancy Discrimination Act ("PDA") case law to claims under the Pregnant Workers Fairness Act ("PWFA") and vice versa. The latter two counts allege discriminatory termination based on Ms. Williams' pregnancy and related medical conditions under the PDA and discriminatory termination caused by Ms. Williams' request and need for reasonable accommodation and Defendants' failure to provide it under the PWFA. Neither of the termination counts allege violations of the anti-retaliation provision of Title VII of the Civil Rights Act of 1964, which is applicable to the PDA, or the distinct prohibitions of retaliation and coercion, intimidation, threats or interference set forth in the PWFA. All four counts of the Complaint set forth sufficient facts to stating cognizable claims that satisfy pleading standards under Rule 8(a) and controlling case law. In reviewing the Complaint under the proper legal standards, Defendants' request for dismissal under Rule 12(b)(6) should be denied.

## RELEVANT FACTUAL BACKGROUND

Taniah Williams began working for Defendants as a Certified Nurse Assistant ("CNA") in January 2024. ECF No. 1 ¶ 1. In April 2024, Ms. Williams learned she was pregnant and may be developing a pregnancy related condition. *Id.* ¶¶ 24-25. Ms. Williams' doctor notified her that she should refrain from heavy lifting, pushing and pulling, and prolonged standing until her expected delivery in early December 2024. *Id.* ¶ 25. Ms. Williams received a written recommendation from her doctor regarding her restrictions, and she provided that to Defendants. *Id.* ¶ 26. While determining what to do with the request, Defendants, acting through their Human Resources representative, did not permit Ms. Williams to work in any capacity. *Id.* ¶ 28. Ms. Williams consistently reached out to this Human Resources representative about the status of her request for accommodation from mid-April to mid-May, 2024. *Id.* ¶ 29. Defendants continued to represent that they were determining how to handle the accommodation request. *Id.*

On May 13, 2024, the Human Resources representative notified Ms. Williams that she had consulted Defendant Atlas Healthcare and Defendants would not be supplying Ms. Williams with any accommodation. *Id.* ¶ 30. She told Ms. Williams that Defendants did not have light duty and there was nothing for Ms. Williams to do. *Id.* ¶ 31. The Human Resources representative also told Ms. Williams that they were removing her from the schedule and she could reapply for employment after her delivery. *Id.* ¶ 30. Despite informing Ms. Williams that there was no light duty, two other employees were placed on light duty. *Id.* ¶ 32. According to their policy, Defendants grant light duty only to employees who have been injured on the job. *Id.* ¶ 33.

## STANDARD OF REVIEW

A motion under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint; it does not, however, "resolve contests surrounding the facts, the merits of a claim, or

the applicability of defenses." *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (quoting

*Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). Under Federal Rule of Civil

Procedure 8(a), a complaint is sufficient when it alleges enough facts to "state a claim to relief that

is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.

Twombly*, 550 U.S. 544, 570 (2007)). A complaint is facially plausible "when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Id.* Thus, when reviewing a motion under Rule 12(b)(6), "a court

'must accept as true all of the factual allegations contained in the complaint' and must 'draw all

reasonable inferences [from those facts] in favor of the plaintiff.'" *Nat'l Fed'n of the Blind, Inc. v.

Lamone*, 438 F. Supp. 3d 510, 520 (D. Md. 2020) (quoting *E.I. du Pont de Nemours & Co.*, 637

F.3d 435, 440 (4th Cir. 2011)).

## ARGUMENT

Congress amended Title VII of the Civil Rights Act of 1964 to include the Pregnancy

Discrimination Act of 1978 ("PDA") with the objective to eradicate workplace discrimination

against pregnant employees. In order to establish a claim under the PDA, an individual must show

intentional discrimination. 42 U.S.C. § 2000e(k). A failure to accommodate a pregnant worker can

constitute disparate treatment under the PDA when an employer refuses to accommodate a

pregnant employee the same as it does another employee similar in their ability or inability to

work. *Young v. United Parcel Service, Inc.,* 575 U.S. 206, 228-29 (2015).

In recognition that there remained gaps in protections for pregnant employees, Congress

passed the Pregnant Workers' Fairness Act ("PWFA") in 2022 creating an affirmative duty for

employers to accommodate employees known limitations due to pregnancy or other related

medical conditions. 42 U.S.C. § 2000gg. The PWFA was modeled after the Americans with

Disabilities Act. *Keiper v. CNN Am., Inc.*, No. 24-CV-875, 2024 WL 5119353, at \*2 (E.D. Wis. Dec. 16, 2024).

> **I.  EEOC is Not Required to Allege A Prima Facie Case Under the *McDonnell Douglas* Circumstantial Evidence Framework.**

In a complaint, a plaintiff need not allege facts establishing a prima facie case under the *McDonnell Douglas* burden shifting scheme, which is an evidentiary standard and not a pleading requirement. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002). "Moreover, the precise requirements of the prima facie case can vary with the context and were 'never intended to be rigid, mechanized, or ritualistic.'" *Id.* at 512 (quoting *Furnco Constr. Corp. v. Waters,* 438 U.S. 567, 577 (1978)). Discovery generally helps determine the specific "formulation of the required prima facie case in a particular case." *Id.*

Thus, the factual allegations in the complaint need only be sufficient to raise the plaintiff's "right to relief above the speculative level." *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010). "Ultimately, a plaintiff must show that the employer took an adverse action against the plaintiff 'under circumstances which give rise to an inference of unlawful discrimination.'" *Hammoud v. Jimmy's Seafood, Inc.*, 618 F. Supp. 3d 219, 234–35 (D. Md. 2022) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253(1981)).

Defendants' argument on this point is contradictory, conceding that under controlling law EEOC is not required to allege a prima facie case yet arguing throughout their motion that EEOC's purported failure to do so should result in the dismissal of the Complaint. As discussed more fully below, EEOC has pleaded sufficient facts for each of its claims to show entitlement to relief above the speculative level.

**II.   EEOC has Stated a Claim for Failure to Provide Reasonable Accommodation Under the PWFA and PDA.**

    **a.   The PWFA Does Not Require the Employee to be Able to Perform all Essential Functions.**

In their motion, Defendants first assert that EEOC's PWFA claims must be dismissed because EEOC has not pleaded that Ms. Williams was qualified to perform the essential functions of her job. Defendants' argument is predicated on a misunderstanding of the PWFA and ignores the allegations in the Complaint.

The PWFA requires employers to "make reasonable accommodations to the known limitations related to the pregnancy, childbirth, or related medical conditions of a qualified employee." 42 U.S.C. § 2000gg-1. Because caselaw interpreting the PWFA is limited, some courts have adapted the ADA prima facie case regarding denial of reasonable accommodation claims for analysis of analogous PWFA claims. *See, e.g., U.S. EEOC v. Sec. Assurance Mgmt., Inc.,* No. CV 25-00181 (RC), 2025 WL 2911781, at *4 (D.D.C. Oct. 14, 2025). In this context, that approach is consistent with legislative intent. *See* 42 U.S.C. § 2000gg(7) (incorporating by reference ADA definitions of "reasonable accommodation" and "undue hardship"). In the Fourth Circuit, the prima facie elements of a failure to provide reasonable accommodation claim under the ADA include the following: (1) the individual has a disability; (2) the employer had notice of the disability; (3) the individual could perform the essential functions of the position with reasonable accommodation; and (4) the employer failed to accommodate the disability. *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013) (quoting *Rhoads v. Fed. Deposit Ins. Corp.,* 257 F.3d 373, 387 n. 11 (4th Cir. 2001)). The third element requires a showing that the individual meets the definition of a "qualified individual" under the Act. *See* 42 U.S.C. § 12111 ("The term "qualified individual" means an individual who, with or without reasonable accommodation, can perform the

essential functions of the employment position that such individual holds or desires.”).

But there are important textual differences between the PWFA and the ADA that require modification of the prima facie case. Unlike the ADA, the PWFA expressly includes in its definition of a “qualified employee” workers who are **unable to perform essential functions** so long as that inability is for a temporary period; the essential function could be performed in the near future; and the inability to perform the essential function can be reasonably accommodated. *See* 42 U.S.C. § 2000gg. The PWFA implementing regulations expand on this definition by noting that an employee is presumed to be able to perform the essential functions in the near future if the employee is pregnant.[1] *See* 29 C.F.R. § 1636.3 (“If the employee is pregnant, it is presumed that the employee could perform the essential function(s) in the near future because they could perform the essential function(s) within generally 40 weeks of its suspension.”). The regulations also note that a reasonable accommodation can include “[t]emporary suspension of essential function(s) and/or modifications or adjustments that permit the temporary suspension of essential function(s).” *Id.* This includes “placement in the covered entity’s light or modified duty program or assignment to light duty or modified work.” *Id.*

Thus, taking into consideration where the protections of the PWFA differ from the ADA, a prima facie case for failure to provide reasonable accommodation under the PWFA requires EEOC to demonstrate the following elements in this case: (1) Ms. Williams had limitations related

---

[1] In enacting the PWFA, Congress instructed EEOC to issue regulations to carry out the PWFA. 42 U.S.C. § 2000gg-3. Congress specifically noted, “Such regulations shall provide examples of reasonable accommodations addressing known limitations related to pregnancy, childbirth, or related medical conditions.” *Id.* The Court may seek guidance from the regulations because they “constitute a body of experience and informed judgment.” *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944); *see also Loper Bright Enters. v. Raimondo,* 603 U.S. 369, 371 (2024) (stating courts may “seek aid from the interpretations of those responsible for implementing particular statutes.”) (citing *Skidmore*, 323 U.S. at 140).

to her pregnancy, childbirth, or related medical conditions; (2) Defendants had notice of these limitations; (3) she could perform the essential functions of the job with reasonable accommodation, or if unable to perform one or more essential functions due to limitations related to pregnancy, childbirth or related medical conditions, such inability was temporary, she was able to perform such functions in the near future, and the inability to perform such functions could have been reasonably accommodated; and (4) Defendants did not provide reasonable accommodation of her limitations. *See* 42 U.S.C. §§ 2000gg(6) & 2000gg-1(1); *see also Sec. Assurance Mgmt., Inc.,* 2025 WL 2911781, at *4. Although not required to plead a prima facie case, EEOC has stated facts that establish each of these elements.

EEOC has plausibly alleged that Ms. Williams was qualified for her position because she was performing the role for several months prior to learning of her pregnancy. *See* ECF No. 1 ¶¶ 22-24. Upon learning of her pregnancy in April 2024, Ms. Williams received temporary restrictions from her doctor that would last until her delivery in December 2024, *id.* ¶ 25, which was the "near future" for purposes of PWFA analysis. It is also reasonable to infer that Defendants were satisfied that she was performing essential job functions, as they did not prevent her from doing her job or terminate until after they learned of her limitations. *See id.* ¶¶ 28-30. These factual assertions coupled with the reasonable inferences that can be drawn from them allege that Ms. Williams was a qualified individual under the PWFA. *See Ibarra v. United States,* 120 F.3d 472, 474 (4th Cir. 1997) (holding a court must accept as true all well-pleaded allegations in the complaint and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff."); *see also Keiper,* No. 24-CV-875, 2024 WL 5119353, at *2 (holding allegations that employee performed her role before her pregnancy without issue and was pregnant with medical limitations was sufficient to allege that employee was qualified.); 29 C.F.R. §

1636.3(f)(2)(i-iii) (defining qualified individual as including an individual who cannot perform the essential functions of the job so long as the inability is temporary, the employee can perform the functions in the near future, and the inability to perform the essential functions can be reasonably accommodated); 29 C.F.R. § 1636.3(f)(2)(iii) ("The inability to perform the essential function(s) can be reasonably accommodated . . . by temporary suspension of the essential function(s) and the employee performing the remaining functions of their position or, depending on the position, other arrangements . . . .").

Defendants also opaquely contend that EEOC's Complaint is "devoid of any allegations relating to the denial of an accommodation and Williams's pregnancy." *See* ECF No. 18-1 at 8. It is not clear what Defendants mean by this argument. The Complaint alleges specifically that Ms. Williams provided Defendants her doctor's written restrictions related to her pregnancy, and that she did this because she was "seeking a reasonable accommodation until her expected delivery in early December 2024." ECF No. 1 ¶¶ 25-26. Accordingly, Ms. Williams was obviously seeking modification of her employment with Defendants that would enable her to work without violation of those restrictions. When requesting reasonable accommodation, a pregnant employee is only required to communicate her need for a workplace adjustment related to pregnancy, thereby triggering the duty of the employer to engage with her in the interactive process of identifying appropriate types of reasonable accommodation; she is not required to identify any specific accommodation when making her initial request. *See, e.g.,* 29 C.F.R. § 1636.3(h)(2) ("To request a reasonable accommodation, the employee or the employee's representative need only communicate to the covered entity that the employee needs an adjustment or change at work due to their limitation."); 29 C.F.R. § 1636.3(h)(3) ("To determine the appropriate reasonable accommodation, it may be necessary for the covered entity to initiate an informal, interactive

10

process as explained in paragraph (k) of this section."); 29 C.F.R. Part 1636, Appx. A at Para. 114 (discussing interactive process of identifying reasonable accommodation and stating, "In some instances, neither the employee requesting the accommodation nor the covered entity may be able to readily identify an appropriate accommodation."). Once the employer knows that an employee has a limitation related to pregnancy, the employer has a duty to engage in the interactive process to determine the appropriate accommodation. *See, e.g., Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 581 (4th Cir. 2015) (holding under ADA, the duty to engage in the interactive process "is triggered when an employee communicates her disability and desire for an accommodation—even if the employee fails to identify a specific, reasonable accommodation."); *see also* 42 U.S.C. § 2000gg(7) (noting the interactive process required by the ADA is required under PWFA). It necessarily follows that a PWFA plaintiff need not plead specific forms of reasonable accommodation or exhaustively catalogue in the complaint all potential reasonable accommodations before discovery on that issue. *See Balthrop v. Montgomery Cnty.*, No. CV GLS-21-1107, 2022 WL 3867939, at *9 (D. Md. Aug. 30, 2022) (holding under ADA, "[a]n employee does not need to allege a specific, reasonable accommodation.").

**b. The PWFA Does Not Require Demonstration of Pregnancy-Based Discriminatory Motivation.**

As discussed above, the PWFA makes it an unlawful employment practice for an employer to refuse to make reasonable accommodations to an employee's known limitations related to pregnancy, childbirth, or related medical conditions of a qualified employee. The PWFA does not require a showing that the employer did not accommodate *because* of pregnancy. As is true of the ADA, there is no need to establish a motive under the PWFA—rather the act of failing to reasonably accommodate Ms. Williams on its own is prohibited regardless of whether that failure was because of pregnancy. *See, e.g., Tonin v. Baltimore City Police Dep't*, No. CV DKC 19-0323,

11

2020 WL 6746476, at *8 (D. Md. Nov. 17, 2020) (stating under the ADA, "[t]he fact that there is no reference to discriminatory intent . . . is not an accident. . . . The denial of a 'reasonable accommodation' alone is discrimination.") (citing *EEOC v. Mfrs. & Traders Tr. Co.*, 429 F.Supp.3d 89, 106 (D. Md. 2019)); *Meyer v. DynCorp Int'l, LLC*, No. GJH-19-3412, 2020 WL 5513436, at *9 (D. Md. Sept. 14, 2020) (in reference to ADA failure to accommodate cases, court recognized "intent is irrelevant."). The plain language of the Act is clear on this point. *See* 42 U.S.C. §§ 2000gg(7) & 2000gg-1(1) (stating "unlawful employment practice" includes failure to provide reasonable accommodation of known limitations, incorporating by reference ADA definition of "reasonable accommodation").

### c. *Daugherty* Does Not Provide a Basis to Dismiss the Complaint.

Thus, as to the PWFA reasonable accommodation claim, Defendants' "because of pregnancy" argument ignores the language of the statute and well established case law. To the extent they argue that EEOC's separate PDA/Title VII reasonable accommodation claim requires facts supporting an inference of pregnancy causation (their argument is less-than-clear on this point), their motion is similarly meritless.

Granted, unlike the stand-alone duty of reasonable accommodation imposed by the PWFA, the PDA requires employers to reasonably accommodate pregnant employees to the extent they accommodate non-pregnant employees who are similar in their ability or inability to work. *See Young*, 575 U.S. at 229. In that regard, Defendants invoke *Daugherty v. Genesis Health Ventures of Salisbury, Inc.*, 316 F. Supp. 2d 262 (D. Md. 2004), a failure to accommodate case under the PDA that predates the Supreme Court's decision in *Young*. For a number of reasons, *Daugherty* does not support Rule 12(b)(6) dismissal of EEOC's PDA claim.

First, *Daugherty* did not address the question of adequacy of pleading under Rule 8(a), as

the case was decided at the summary judgment stage. *See id.* at 263.

Second, to whatever extent *Daugherty* is persuasive on the required proof of a PDA accommodation claim post-*Young*, [2] its analysis is limited to the issue of a defendant's rebuttal of a prima facie showing of discrimination, not whether the plaintiff has stated a plausible prima facie case. *See, e.g., Young*, 575 U.S. at 229. As the Supreme Court made clear in *Young*, once a PDA plaintiff demonstrates a prima facie case, an employer can identify a pregnancy-neutral policy as a legitimate nondiscriminatory reason for failing to accommodate that employee. *See id.* The plaintiff can then demonstrate the policy is pretext by "providing sufficient evidence that the employer's policies impose a significant burden on pregnant workers, and that the employer's 'legitimate, nondiscriminatory' reasons are not sufficiently strong to justify the burden, but rather—when considered along with the burden imposed—give rise to an inference of intentional discrimination." *Id.*

At the motion to dismiss stage, the Court cannot determine if Defendants' potential nondiscriminatory reasons for its failure to accommodate are pretext for discrimination. *Woods v.*

---

[2] Although in the current procedural posture of this case, the initial pleading stage, it is unnecessary for the Court to determine the persuasive weight *Daugherty* should be accorded, if any, EEOC notes that there are aspects of the decision that conflict with principles of Title VII interpretation reflected in controlling law. For instance, the conclusion in *Daugherty* that the plaintiff failed to establish a PDA accommodation violation was based on evidence that the employer's policy restricting light duty to on-the-job-injuries treated pregnant workers the same as non-pregnant workers who were also not injured on the job, or as the court stated, "[D]efendant treats all disabilities among the nursing staff that arise other than on-the-job equally." *Id.* at 265.  However, that rationale is highly problematic as a matter of Title VII interpretation because it requires a PDA plaintiff to adduce evidence not only that a non-pregnant worker who was similar in their ability to work was treated better, but that *all* non-pregnant workers similar in their ability to work were treated better than pregnant workers. But it is well-established under Title VII that a plaintiff is not required to prove they were treated worse than *every other worker* who does not share their protected classification. *See, e.g., Young*, 577 U.S. 230 (noting an inference of discrimination can be made when an employer accommodates a portion of nonpregnant employees and "categorically failing to accommodate pregnant employees with lifting limitations"). An inference of discriminatory causation may arise from a single comparator, and there are reasons why a worker outside the protected class may be treated in similarly adverse manner as the plaintiff that in no way rebut the inference of causation. *Williams v. Brennan*, No. 116CV01600RLYTAB, 2018 WL 8636001, at *10 (S.D. Ind. Mar. 29, 2018) ("This reverse-comparator evidence is not relevant because Plaintiff is not required to establish that she was treated *worse* than every similarly situated employee outside of her protected class. Instead, she must establish that at least one similarly situated person outside of her protected class was treated more favorably.").

*City of Greensboro*, 855 F.3d 639, 649 (4th Cir. 2017) ("Whether the City's nondiscriminatory explanation for rejecting the third-lien position is in fact pretext is a question to be analyzed under the long-familiar shifting burdens regime of *McDonnell Douglas v. Green*, 411 U.S. 792 (1973), and not under Rule 12(b)(6)."). Moreover, even if Defendants' invocation of "business necessity" were relevant to EEOC's claims in this case, it is an affirmative defense that cannot be resolved at the motion to dismiss stage unless the facts alleged in a complaint clearly establish the defense. *E.g., EEOC v. Serv. News Co.*, 898 F.2d 958, 962 (4th Cir. 1990) (Business necessity is an affirmative defense generally only raised in disparate impact cases.); *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) ("But in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6). This principle only applies, however, if all facts necessary to the affirmative defense 'clearly appear[] on the face of the complaint.'") (citing *Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir.1993)).

### d.  The Complaint Alleges a Violation of the PDA/Title VII.

As Defendants recognize, a plaintiff is not required to plead a prima facie case of discrimination, but only "allege facts to satisfy the elements of a cause of action created by that statute." *McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 584-85 (4th Cir. 2015). Yet Defendants assert the Court should dismiss EEOC's PDA claim in Count II[3] because EEOC did not allege a prima facie case. In so doing, Defendants cite the incorrect formulation of a prima facie case for a PDA failure to accommodate claim.

---

[3]  Again, Defendants' motion is not clear on this point.  They specifically state that they seek dismissal of Count II, the PDA accommodation claim, and they do not cite Count IV, the PDA termination claim, s*ee* ECF No. 18-1 at 14 (subsection B. heading specifying "Count II"), though they go on to reference and make argument regarding Ms. Williams' termination. *See id.* at 16 (discussing termination decisionmaker arguments). Accordingly, to the extent Defendants' motion was intended to seek dismissal of the PDA termination claim in Count IV, EEOC's analysis applies equally to that claim, and Rule 12(b)(6) dismissal of that claim is similarly unwarranted.

14

The Supreme Court in *Young* identified the prima facie elements that apply to a failure to accommodate claim under the PDA: (1) the employee belongs to the protected class; (2) she sought accommodation; (3) the employer did not accommodate her; and (4) the employer did accommodate others "similar in their ability or inability to work." *Young*, 575 U.S. at 229. Elements of a prima facie case enunciated before *Young* or in a context outside of the PDA do not apply. *See, e.g.*, *id.* (noting that the approach in *Young* is "limited to the Pregnancy Discrimination Act" context). Notably, the *Young* framework does not include satisfactory job performance as an element of the prima facie case. *See id.*

Moreover, as to the PDA termination claim, there is also no requirement that a plaintiff demonstrate satisfactory job performance in all cases in order to give rise to an inference of discriminatory causation (e.g., motive). Proof of satisfactory job performance is certainly one method that may be used to establish an inference of invidious motive under the *McDonnell Douglas* circumstantial evidence analytic framework. *See Caban v. MET Lab'ys, Inc.*, No. CV JKB-17-1872, 2019 WL 2146915, at *9 (D. Md. May 16, 2019) (recognizing that there will be times when an employer will use their "legitimate expectations" as a pretext for discrimination). However, it is not exclusive and need not be pleaded. *See Johnson v. SecTek, Inc.*, No. CIV.A. ELH-13-3798, 2015 WL 502963, at *11 (D. Md. Feb. 4, 2015) ("plaintiff is not required to plead that she met [Defendant's] "legitimate expectations of job performance." This is not a statutory element of the claim and thus is not required at the pleading stage."). An inference of discriminatory causation can arise from other types of circumstantial evidence, as the *McDonnell Douglas* framework is not to be applied in a rigid, formulaic manner that restricts the range of other facts that may be deemed sufficiently probative of motive, nor is circumstantial evidence the only method of demonstrating such causation. *See Graver v. WESTAT, Inc.*, No. CV DKC 2004-

15

0475, 2007 WL 9782526, at *2 (D. Md. Jan. 16, 2007) (identifying the use of direct or indirect evidence as a method for proving intentional discrimination in employment); *Carter v. Harrison*, No. CV JRR-21-02724, 2022 WL 1556095, at *3 (D. Md. May 17, 2022) ("The requirements of a prima facie case 'can vary depending on the context and were 'never intended to be rigid, mechanized, or ritualistic'") (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002)); *Saphilom v. Nationwide Mut. Ins. Co.,* No. CV JKB-18-1180, 2020 WL 1638415, at *8 (D. Md. Apr. 2, 2020) ("Where, as here, the plaintiff was discharged for reasons having some relation to his or her disability, it is proper to analyze the plaintiff's wrongful discharge claim under the direct scheme of proof.") (quoting *Wells v. BAE Sys. Norfolk Ship Repair*, 483 F. Supp. 2d 497, 507–08 (E.D. Va.), aff'd, 250 F. App'x 552 (4th Cir. 2007))..

Here, there is more than sufficient facts pleaded in the Complaint to permit a rational inference of pregnancy causation. *See infra* discussion at Section II.f. (discussing facts in complaint stating PWFA and PDA termination claims).

But even if satisfactory job performance were an element of the prima facie case, and even if, contrary to controlling law, EEOC was required to plead such prima facie case, the facts plausibly allege that Ms. Williams was performing satisfactorily. The Complaint states that she worked for Defendants for four months and was only discharged when Defendants refused to accommodate her pregnancy limitations. *See* ECF No. 1 ¶¶ 22, 24, and 30. It further states that Defendants told Ms. Williams she could reapply after her delivery, permitting a reasonable inference that she was performing in a manner that satisfied Defendants. *Id.* ¶ 30.

In their motion, Defendants also assert that with regard to its PDA accommodation claim, EEOC is required to identify workers who were similarly situated to Ms. Williams "in all relevant aspects," citing a non-PDA decision. ECF No. 18-1 at 12 (citing *Gaines v. Baltimore Police Dept.*,

16

657 F.Supp.3d 708, 734 (D. Md. 2023)). But that is not the law. Under the plain language of the PDA, it is unlawful to treat pregnant employees less favorably than those "similar in their ability or inability to work." 42 U.S.C. § 2000e(k). There is no requirement that EEOC demonstrate that these individuals are "similarly situated in all relevant respects" as argued by Defendants. *See Ensley-Gaines v. Runyon,* 100 F.3d 1220, 1226 (6th Cir. 1996) ("While Title VII generally requires that a plaintiff demonstrate that the employee who received more favorable treatment be similarly situated 'in all respects,' the PDA requires only that the employee be similar in his or her 'ability or inability to work.'") (citations omitted); *see also Hammoud v. Jimmy's Seafood, Inc.,* 618 F. Supp. 3d 219, 234 (D. Md. 2022) ("Moreover, questions about the suitability of comparators "are inherently fact-based and should not be resolved at the pleadings stage where [Plaintiff] has alleged enough facts to permit a plausible inference that" she experienced discrimination.") (quoting *Hisp. Nat'l L. Enf't Ass'n NCR v. Prince George's Cnty*, No. TDC-18-3821, 2019 WL 2929025, at *15 (D. Md. July 8, 2019)); *Snoddy v. Prince George's Cnty*, No. CV SAG-21-2528, 2023 WL 5509323, at *5 (D. Md. Aug. 24, 2023) ("Whether Plaintiff will eventually be able to establish, for example, that other similarly situated employees were treated differently is not the standard at the motion to dismiss phase.").

Here, EEOC alleges that Ms. Williams sought an accommodation for her pregnancy restrictions, Defendants denied Ms. Williams any type of accommodation, Defendants have a blanket policy that precludes pregnant employees from receiving light duty for limitations arising out of pregnancy, and Defendants placed two other employees on light duty at the time Ms. Williams sought an accommodation. *See* ECF No. 1 ¶¶ 26-33. In that regard, the Complaint also alleges that Defendants provided the accommodation Ms. Williams needed "to other nonpregnant employees similar in their ability or inability to work." *Id.* at ¶ 41. It is highly plausible that

17

numerous other workers who were injured on-the-job and unable to perform essential job functions have also been accommodated under this policy.  The Complaint also identifies other indicia of discrimination. Defendants put Ms. Williams on unpaid leave for nearly a month after she requested accommodation. *Id.* ¶¶ 28-30. Defendants told Ms. Williams that they did not have light duty even though Defendants have a light duty policy for individuals who are injured on the job and placed two other employees on light duty. *Id.* ¶¶ 30-33. This is enough under Rule 8(a) to allege a cause of action for failure to accommodate under the PDA. *See, e.g.,  Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[F]actual allegations must be enough to raise a right to relief above the speculative level."). Defendants' motion raises factual disputes that are premature at the pleading stage of this case.

### III.    EEOC Has Pleaded Adequate Facts Regarding Defendants' Liability.

Defendants argue that EEOC's Title VII termination claim should be dismissed because the Complaint does not name the specific company official(s) who made the decision to terminate Ms. Williams' employment and/or who possessed the organizational authority to make such decision. ECF No. 18-1 at 10-12. In that regard, Defendants appear to suggest that because they may have hidden from Ms. Williams the identity of the particular company official who specifically made the decision to terminate her rather than accommodate her pregnancy, they can avoid liability. While Defendants assert this argument solely in relation to the PDA/Title VII termination claim (Count IV), extending their argument to the PWFA termination claim or any other claims does not change the result. Defendants' argument is meritless, as it seeks to construct an excessively high bar for the pleading stage of litigation, essentially converting agency law principles into a rigid pleading rule and demanding it be satisfied by identification of specific agents. Neither Rule 8(a) nor controlling precedent support such a rule.

18

Title VII prohibits an "employer" from discriminating against an employee "because of her sex." 42 U.S.C. § 2000e-3(a). EEOC has alleged that "Defendants" took action against Ms. Williams when they denied Ms. Williams accommodation and terminated her due to her pregnancy. *See generally* ECF No. 1 at ¶¶ 26-34. This necessarily includes any agents acting on their behalf. In that regard, as the Fourth Circuit and this Court have held, at the pleading stage, a plaintiff is not required to further identify the specific individuals responsible for a defendant's discriminatory decisions. *See Miller v. Maryland Dep't of Nat. Res.*, 813 F. App'x 869, 878 (4th Cir. 2020) (reversing Rule 12(b)(6) dismissal of retaliation claim for failure to plead identity of discharge decisionmakers or that they possessed knowledge of plaintiff's protected activity, holding plaintiffs must plead some facts to allow reasonable inference of discriminatory causation but not required to identify specific decisionmakers at pleading stage); *Dailey v. Elkton SNF, LLC*, No. 1:25-CV-1828-JMC, 2025 WL 2822993, at *9 (D. Md. Oct. 3, 2025) ("Moreover, a plaintiff need not plead a particular decision-maker had a discriminatory animus to survive a motion to dismiss if other factors support such an inference."); *Parker v. Whole Food Mkt. Grp., Inc.,* No. 1:23-CV-03321-JRR, 2025 WL 403734, at *9 (D. Md. Feb. 4, 2025) ("Plaintiff's allegations are sufficient at this stage even where he has not specifically named the decisionmaker who subjected him to the alleged adverse actions.") (citing *Miller*).The new pleading rule that Defendants seek to induce this Court into adopting—requiring identification of the individual decisionmakers at the pleading stage and specific facts concerning the scope of their agency relationship with the defendant-employer—is highly unrealistic and would greatly undermine the purposes of Title VII and other federal civil rights laws. *See, e.g., Porras v. N. Oklahoma Cnty. Mental Health*, No. CIV-21-0631-F, 2021 WL 5065865, at *3 (W.D. Okla. Nov. 1, 2021) (rejecting argument that plaintiff was required to identity of decisionmaker, noting "[a] plaintiff may not know the decisionmaker's

identity at this stage.") (citing *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012)); *Gilliard v. Gruenberg*, 302 F. Supp. 3d 257, 290 (D.D.C. 2018) ("Given the information asymmetry, it is hardly fair to expect that a (purported) victim will arrive in Court with a smoking gun in her hand."). The Fourth Circuit has noted the low-level of information about challenged decisions that may be available to plaintiffs at the pleading stage of discrimination cases and has cautioned against applying plausibility standards in a manner that ignores that practical reality to the detriment of meritorious claims. *See Woods v. City of Greensboro*, 855 F.3d 639, 652 (4th Cir. 2017) ("[D]iscrimination claims are particularly vulnerable to premature dismissal . . . civil rights cases are more likely to suffer from information-asymmetry, pre-discovery.").

Thus, there is no requirement under Rule 8(a) that plaintiffs engage in detailed recitation of facts relevant to agency law principles at the pleading stage. All that is required are some facts stating a plausible discrimination claim against a defendant. EEOC has pleaded such facts. the allegations in the Complaint permit a reasonable inference that Defendants themselves committed unlawful employment practices concerning Ms. Williams. And even if more detailed pleading were required, such as facts bearing on whether the unlawful employment practices were authorized by the enterprise or taken within the scope of someone's organizational authority, that erroneous standard would also be satisfied here. The Complaint alleges that Ms. Williams communicated her pregnancy limitations and need for an accommodation, and that Defendants considered whether Ms. Williams suffered from a disability in determining how to respond. ECF No. 1 at ¶¶ 26-28. While determining whether to accommodate, Defendant Roland Park SNF's Human Resources representative would not allow Ms. Williams to continue to work. *Id.* ¶ 28. When Ms. Williams followed up with the representative over the next several weeks, the representative explained that "**Defendants** were still deciding how to handle the request." *Id.* ¶ 29

20

(emphasis added). The representative then told Ms. Williams that she had consulted with Defendant Atlas Healthcare, and "**Defendants** were rejecting her request for reasonable accommodation, that they were removing her from the schedule, and that she could reapply after her delivery." *Id.* ¶ 30 (emphasis added). These allegations taken together permit the reasonable inference that the Human Resources representative either conferred with an individual with the authority to make the decision to refuse accommodation and terminate Ms. Williams or that the Human Resources representative possessed the authority to make that decision. Moreover, the Complaint identifies a corporate policy that precluded accommodating Ms. Williams, demonstrating that the actions taken by Defendants were part of a corporate approved policy.

The decisions that Defendants cite do not support their argument for a detailed agency pleading requirement, as they did not address whether detailed facts bearing on agency law principles have to be mustered *at the pleading stage*, *see Ousley v. McDonald*, 648 F. App'x 346, 348 (4th Cir. 2016) (affirming summary judgment in Title VII case, insufficient evidence of discriminatory motivation of decisionmaker), or they involve claims dismissed under Rule 12(b)(6) because no allegation in the complaint supported an inference of discrimination. *See Chang Lim v. Azar,* 310 F. Supp. 3d 588, 602 (D. Md. 2018) (holding employee had failed to assert "sufficient allegations to support a plausible claim of discriminatory termination" because there were no allegations of better treatment to individuals outside the protected class and the only reference to discriminatory animus was related to an individual who did not have authority to terminate the employee); *see also Traore v. Baltimore Police Dep't,* No. CV MJM-22-793, 2023 WL 8600553, at *9 (D. Md. Dec. 12, 2023) (same); *Sarraj v. N. Virginia Elec., Coop.,* No. 1:22-CV-12, 2022 WL 2820553, at *5 (E.D. Va. July 18, 2022) (same).

21

**IV.    The Complaint Permits the Inference that Defendants Terminated Ms. Williams Because of Sex in Violation of the PDA and/or Because of her Need for Accommodation in Violation of the PWFA.**

Contrary to the Rule 12(b)(6) cases that Defendants cite, in this matter EEOC has alleged sufficient facts to permit a reasonable inference of discriminatory termination.   To allege discriminatory termination, a plaintiff "must allege sufficient facts to make it plausible that (1) she suffered an adverse employment action, and (2) the action was because of her sex." *Franovich v. Hanson*, 687 F. Supp. 3d 670, 683 (D. Md. 2023); *see also Hammoud v. Jimmy's Seafood, Inc.*, 618 F. Supp. 3d 219, 234 (D. Md. 2022) (holding plaintiff alleging discrimination based on direct evidence need not address the elements of a *McDonnell Douglas* prima facie claim.). Here, EEOC alleges that Ms. Williams suffered an adverse employment action when Defendants terminated her employment.

To plausibly allege that an employer took an adverse action because of a protected characteristic, a plaintiff should assert facts that allow the court to infer "that 'the protected trait . . . actually motivated the employer's decision.'" *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 286 (4th Cir. 2004) (quoting *Reeves,* 530 U.S. at 141), abrogated in part on other grounds*, Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009). EEOC has alleged that after receiving Ms. Williams' limitations related to her pregnancy, a Human Resources representative refused to allow her to continue working. ECF No. 1 ¶ 28. The representative then spoke to Ms. Williams to inform her that Defendants would not be accommodating her pregnancy limitations, and instead, they would terminate her. ECF. *Id.* ¶ 30. The representative also noted that Ms. Williams could reapply **after her delivery**. *Id.* The fact that Defendants barred Ms. Williams from working immediately upon learning of her pregnancy and related medical restrictions; discharged her in lieu of accommodating those restrictions, indeed announcing the firing in the same conversation;

22

and decided that they would rehire her only after she was no longer pregnant and would no longer need a pregnancy related accommodation is more than sufficient to permit the reasonable inference that Defendants terminated her because of her pregnancy, related medical conditions, and/or pregnancy-related accommodation need. *See Cowgill v. First Data Techs., Inc.*, 41 F.4th 370, 380–81 (4th Cir. 2022) (temporal proximity of three weeks between disclosure of disability and request for accommodation and adverse employment action raises a strong inference of discrimination). EEOC has stated a plausible termination claim.

Moreover, pregnancy or accommodation-related bias or animus need not be shown. The standard for liability under Title VII and its ADA analogue is *causation*, of which discriminatory animus or motive is one species, but not the only method of showing causation. It is well-established that denial of reasonable accommodation is a statutorily defined form of intentional discrimination on the basis of pregnancy. *See, e.g.,* 42 U.S.C.  §§ 2000gg-2(a)(3) & 2000gg-2(g) (PWFA provisions authorizing compensatory and punitive damages under 42 U.S.C. § 1981a for denial of reasonable accommodation unless employer demonstrates good faith efforts to identify and provide reasonable accommodation); *Young*, 575 U.S. at 229 (discussing prima facie case for alleging the denial of an accommodation constituted disparate treatment); *cf.* 42 U.S.C. § 12112(a) & (b)(5)(A), 42 U.S.C. 1981a(a)(2) (defining discrimination "on the basis of disability" to include denial of reasonable accommodation, authorizing compensatory and punitive damages for such denial).  Moreover, it is also clear that but-for the existence of a pregnancy or related medical condition, there would be no reasonable accommodation need in such cases; therefore, where a discharge flows from the fact that a worker has been unlawfully denied a reasonable accommodation, that discharge is causally related to the pregnancy or associated medical condition that required accommodation.

Accordingly, as the federal courts have held in ADA cases, the requisite causation supporting a discriminatory termination claim can be established by facts allowing a reasonable inference that but-for an unlawful denial of reasonable accommodation, the plaintiff would not have been discharged. *See Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1139–40 (9th Cir. 2001) ("Unlike a simple failure to accommodate claim, an unlawful discharge claim requires a showing that the employer terminated the employee because of his disability. Often the two claims, are, from a practical standpoint, the same. The link between the disability and termination is particularly strong where it is the employer's failure to reasonably accommodate a known disability that leads to discharge for performance inadequacies resulting from that disability.") (citing *Borkowski v. Valley Central Sch. Dist.,* 63 F.3d 131, 143 (2d Cir. 1995) and other authorities); *Hildebrand v. Dollar Gen. Corp.*, No. 3:11-CV-00554, 2013 WL 3761291, at *6 & n.11 (M.D. Tenn. July 16, 2013) (holding motive evidence establishing pretext not required to support ADA discharge claim, disability causation established by evidence that failure of employer to provide reasonable accommodation was but-for cause of performance deficiencies for which employee was terminated, noting "it would frustrate the ADA's purposes if [the employer] could be insulated from liability for causing [the employee] to fail by refusing to accommodate her disability.") (citing *Kravits v. Shinseki,* Civil Action No. 10–861, 2012 WL 604169, at *8–9 (W.D. Pa. Feb. 24, 2012)); *Lamberson v. Pennsylvania*, 963 F. Supp. 2d 400, 413 (M.D. Pa. 2013) (in ADA Title II action, holding plaintiff may satisfy ADA causation requirement by proof that denial of a government benefit or service would not have occurred absent denial of reasonable accommodation), *aff'd*, 561 F. App'x 201 (3d Cir. 2014); *Smith v. JP Morgan Chase*, No. CIV.A. 09-0168, 2011 WL 841439, at *9 (W.D. La. Mar. 8, 2011) (holding plaintiff could establish discharge on basis of disability by proof that performance deficiencies cited as reason for

24

termination were result of failure to reasonably accommodate hearing impairment).

Here, the factual allegations in the Complaint would permit a rational inference that Defendants' decision to terminate Ms. Williams flowed from (indeed, was an inevitable consequence of) its knowing refusal to accommodate her pregnancy-related limitations through light duty or any other arrangement, a decision that effectively barred her from working for Defendants in any capacity during her pregnancy. *See Dailey*, No. 1:25-CV-1828-JMC, 2025 WL 2822993, at *9 (When "the only friction revolves around a disability, that too justifies an inference of discriminatory intent at the motion to dismiss stage."); *Meyer v. DynCorp Int'l, LLC*, No. GJH-19-3412, 2020 WL 5513436, at *9 (D. Md. Sept. 14, 2020) ("The court also finds the fourth element satisfied, as Plaintiff was terminated immediately after requesting a reasonable accommodation.") (citing *Haulbrook v. Michelin N. Am.*, 252 F.3d 696, 706 (4th Cir. 2001)). Again, EEOC has stated a plausible termination claim.

Because EEOC has alleged that Ms. Williams was terminated because of her pregnancy and related limitations, EEOC has sufficiently pleaded Count III and Count IV.

**V.    EEOC Has Not Brought Claims of Retaliation.**

Defendants' final arguments in their motion are predicated on a misreading of the Complaint and a misunderstanding of the relevant statutes. Count III and Count IV allege discriminatory discharge—not retaliatory discharge. As to the PWFA termination claim in Count III, EEOC alleges a violation of Sections 103(3) and 103(5) of the Act, 42 U.S.C. §§ 2000gg-1(3) & (5). A Section 103(3) claim is analogous to a sex/pregnancy discrimination claim under Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1), while a Section 103(5) claim is analogous to a disability discrimination claim based on the need for reasonable accommodation under Sections 102(a) and 102(b)(5)(B) of the ADA, 42 U.S.C. §§ 12112(a) & 12112(b)(5)(B). *See Sec.*

25

*Assurance Mgmt., Inc.*, No. CV 25-00181 (RC), 2025 WL 2911781, at *4  (D.D.C. Oct. 14, 2025). The PDA/Title VII termination claim in Count IV asserts pregnancy discrimination in violation of Section 703(a)(1) of the Act, 42 U.S.C. § 2000e-2(a)(1).

Notably, neither Count III nor Count IV assert retaliation claims or invoke the distinct anti-retaliation provisions of the PFWA, which are set forth in Section 104(f) of the Act, 42 U.S.C. § 2000gg-2(f), or Title VII's retaliation prohibition, which is set forth in Section 704(a) of the Act, 42 U.S.C. § 2000e-3(a). *See* ECF No. 1 at ¶¶ 45-54. As such, Defendants arguments regarding retaliatory discharge do not provide a basis to dismiss Count III or Count IV.

## CONCLUSION

EEOC has stated claims upon which relief can be granted.  Accordingly, for the reasons set forth above, EEOC respectfully requests that the Court enter an order denying Defendants' motion. Alternatively, in the event the Court finds that any issues raised in Defendants' motion require pleading of additional facts, EEOC requests that the agency be granted leave to amend its Complaint.

Respectfully submitted,

/s/ Lindsay C. Sfekas
LINDSAY C. SFEKAS
SENIOR TRIAL ATTORNEY
D. Md. Bar No. 19893
EEOC – Baltimore Field Office
George H. Fallon Federal Building
31 Hopkins Plaza, Suite 1432
Baltimore, MD 21201
Phone: (410) 801-6713
Fax: (443) 992-7880
Email: lindsay.sfekas@eeoc.gov

RONALD L. PHILLIPS
ASSISTANT REGIONAL ATTORNEY

**CERTIFICATE OF SERVICE**

I hereby certify that on February 13th, 2026, a true and accurate copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

/s/ Lindsay C. Sfekas
Lindsay C. Sfekas
Senior Trial Attorney

*Counsel for EEOC*